UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Ilias Natsis</u>

v.                                          Civil No. 16-cv-063-LM
                                            Opinion No. 2017 DNH 049
<u>Nancy A. Berryhill, Acting</u>
<u>Commissioner of Social Security</u>[1]


O R D E R


        Ilias Natsis seeks judicial review, pursuant to 42 U.S.C. §
405(g), of the decision of the Acting Commissioner of the Social
Security Administration, denying his application for social
security disability benefits.  Natsis contends that the
Administrative Law Judge ("ALJ") erred in his assessment of the
medical evidence, in evaluating the credibility of his
subjective complaints, and in assessing his residual functional
capacity.  The Acting Commissioner moves to affirm.


**Standard of Review**

        In reviewing the final decision of the Acting Commissioner
in a social security case, the court "is limited to determining
whether the ALJ deployed the proper legal standards and found
facts upon the proper quantum of evidence."  Nguyen v. Chater,

---

        [1] Nancy A. Berryhill became Acting Commissioner of the Social
Security Administration on January 23, 2017, replacing Carolyn
W. Colvin.  <u>See</u> Fed. R. Civ. P. 25(d).

172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276
F.3d 1, 9 (1st Cir. 2001).  The court defers to the ALJ's
factual findings as long as they are supported by substantial
evidence.  § 405(g).  "Substantial evidence is more than a
scintilla.  It means such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion."  Astralis
Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d
62, 66 (1st Cir. 2010).

## Background

The background information is summarized from the parties'
joint statement of material facts.  See LR 9.1(c).  The joint
statement does not include a summary of any medical records.
The court relies on the joint statement and, therefore, assumes
that any medical evidence in the Administrative Record was not
deemed to be significant by the parties.

In February 2013, Ilias Natsis applied for social security
disability benefits, claiming a disability that began on March
12, 2013.  Natsis alleged that he was disabled because of
cervical degenerative disc disease and migraine headaches.
Natsis was forty-six years old at the time of his application.
He had previously worked in the banking industry and was self-
employed in the pizza business for the 15 years prior to his
application for benefits.

I.   Function Report

On March 19, 2013, Natsis submitted a Function Report to the Social Security Administration.  Natsis wrote in the Function Report that he has cervical degenerative disc disease and is in constant pain in his neck and upper back.  He also wrote that he has severe migraines, and has "intolerable" levels of pain when he is subject to continuous standing, sitting, or exposure to mental and physical stress.

Natsis also described his typical day.  He wrote that he stretches when he wakes up and takes a hot shower to relax his muscles.  He then has breakfast and reads the news before using home treatment, usually a "traction device" or a TENS unit,[2] for the pain in his neck.  He usually spends time paying bills and running errands, and often makes food.  After having something to eat, he generally rests, before getting up around 5:00 p.m. and watching a movie or playing guitar.  He also spends a few hours talking to his wife before going to bed around 10:00 p.m. Natsis also helps care for his children and his mother, does clean-up around the house, mows the lawn, cleans, shops, drives

---

[2] "TENS" is an acronym for "transcutaneous electrical nerve stimulation."  It is a device that applies electricity to a patient's skin to reduce pain.

a car, and has no problems caring for himself.

II.  State Agency Physician Opinion

On May 8, 2013, Dr. Hugh Fairley, a state agency consultative physician, reviewed Natsis's medical records of physical impairments.  He opined that Natsis could perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). A full range of light work means that the claimant can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday, sit (with normal breaks) for about six hours in an eight-hour workday, has an unlimited ability to push and/or pull (including operation of hand and/or foot controls), and has no postural, manipulative, visual, communicative, or environmental limitations.

III.  Hearing Before the ALJ

A hearing before an ALJ was held on Natsis's application on August 13, 2014.  Natsis was represented by an attorney and testified at the hearing.

Natsis testified about his daily activities.  He stated that he would be in excruciating pain after standing for as little as 30 minutes or sometimes longer than an hour.  He also testified that he did yoga with his daughter, but sometimes had difficulty climbing stairs, did not do household chores or

4

outside work, could only walk a "couple of blocks" before his neck started to ache, and was unable to bend over.  He further testified that there was no indication that he was a candidate for surgery.

IV.  <u>ALJ's Decision</u>

The ALJ issued an unfavorable decision on September 3, 2014.  The ALJ found that Natsis had severe impairments due to moderate degenerative disc disease of the cervical spine, with spondylosis and foraminal narrowing at the C5-C6 and C6-C7 levels but without significant compromise of the central canal. He also found that Natsis's impairments did not meet or equal a listed impairment.  The ALJ concluded that Natsis had the residual functional capacity to do light work under 20 C.F.R. § 404.1567(b), and had unlimited use of hands and feet to operate controls, and push and pull.  With that evaluation, the ALJ found that Natsis could do his past work as a restaurant owner and credit analyst and, therefore, was not disabled.  The Appeals Council denied Natsis's request for review, making the ALJ's decision the Acting Commissioner's final decision.

**Discussion**

In support of his motion to reverse the Acting Commissioner's decision, Natsis contends that the ALJ erred in

his assessment of the medical evidence, in evaluating the
credibility of his subjective complaints, and in assessing his
residual functional capacity.  The Acting Commissioner moves to
affirm.

In determining whether a claimant is disabled for purposes
of social security benefits, the ALJ follows a five-step
sequential analysis.  20 C.F.R. §§ 404.1520.  The claimant bears
the burden through the first four steps of proving that his
impairments preclude him from working.  Freeman v. Barnhart, 274
F.3d 606, 608 (1st Cir. 2001).  At the fifth step, the Acting
Commissioner has the burden of showing that jobs exist which the
claimant can do.  Heggarty v. Sullivan, 947 F.2d 990, 995 (1st
Cir. 1991).

I.  Medical Opinion Evidence

An ALJ is required to consider the medical opinions along
with all other relevant evidence in a claimant's record.  20
C.F.R. § 404.1527(b).  Medical opinions are evaluated based on
the nature of the medical source's relationship with the
claimant, the consistency of the opinion with the other record
evidence, the medical source's specialty, and other factors that
may be brought to the ALJ's attention.  § 404.1527(c).  The ALJ
may rely on opinions of state agency consultant physicians under
the same analysis as that applied to opinions of treating or

examining medical sources.  § 404.1527(e); Ormon v. Astrue, 497 F. App'x 81, 84 (1st Cir. 2012); Smallidge v. Colvin, 2014 WL 799537, at *5 (D.N.H. Feb. 28, 2014); see also Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians, SSR 96-6p, 1996 WL 374180 (July 2, 1996).

Medical opinions based on the claimant's subjective reports, rather than objective medical findings, may be entitled to less weight. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).  Further, medical opinions are "'statements . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, and what [he] can still do despite impairment(s), and [his] physical or mental restrictions.'" Hesson v. Colvin, No. 2:15-cv-106-DBH, 2015 WL 7259747, at *4 (D. Me. Sept. 29, 2015) (quoting 20 C.F.R. § 416.927(a)(2)).  Therefore, treatment notes and medical records that do not include judgments about a claimant's restrictions or functional abilities do not constitute medical opinions. See, e.g., Delgado-Benitez v. Astrue, No. CIV. 10-2065 MEL, 2012 WL 1110157, at *8 (D.P.R. Mar. 30, 2012) (noting that "progress notes and treatment records that do not include any judgments about plaintiff's physical restrictions or what she can do

7

despite her impairments . . . . do not constitute medical opinions").

Natsis asserts that the "objective medical findings do not support the determinations of the ALJ."  Doc. no. 11-1 at 3.  In support, Natsis cites a pain clinic note from November 2011, see Admin. R. at 256, a July 2014 radiological report of an MRI of his cervical spine, see id. at 300, and two medical records that were generated in February 2015, see id. at 9-10, 30, after the ALJ issued his decision.

As the Appeals Council noted, the medical records from February 2015 have no bearing on whether Natsis was disabled at the time the ALJ issued his decision.  Natsis's motion challenges the ALJ's determination, not the Appeals Council's decision.

None of the records Natsis cites, including those from February 2015, is a medical opinion about the effect of Natsis's medical condition on his ability to function.  Instead, the cited records describe Natsis's symptoms and provide diagnoses. Even if those records supported Natsis's position, the ALJ could not rely on them in making a determination of disability without a corresponding medical opinion.  See Nguyen, 172 F.3d at 35 ("An ALJ, as a layperson, may not interpret medical data in functional terms without a supporting medical opinion."); see

8

also Merced v. Astrue, No. CIV. 10-1253 MEL, 2012 WL 1110599, at
*7 (D.P.R. Mar. 30, 2012) ("The progress notes from plaintiff's
treating physicians included her diagnoses and symptoms, but no
information about the . . . effect on her physical abilities and
any resulting physical restrictions.  Therefore, the medical
evidence of record was unhelpful for determining if plaintiff's
conditions were disabling.").

     The only medical opinion cited by the parties was provided
by Dr. Fairley.  Dr. Fairley concluded that Natsis was capable
of doing a full range of light work.  As such, the only opinion
in the record supports the ALJ's finding.  Therefore, Natsis's
argument that the ALJ erred in weighing the medical evidence is
without merit.

## II.   Natsis's Subjective Complaints

     Natsis next asserts that the ALJ failed to properly assess
his subjective complaints by not crediting his statements
regarding his limitations in the activities of daily living.  He
argues that his complaints support a finding of disability.

     "The credibility determination by the ALJ, who observed the
claimant, evaluated his demeanor, and considered how that
testimony fit in with the rest of the evidence, is entitled to
deference, especially when supported by specific findings."
Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195

(1st Cir. 1987); see also Flood v. Colvin, No. 15-2030, 2016 WL 6500641, at *1 (1st Cir. Oct. 20, 2016) ("Ordinarily, this court must defer to a credibility determination made by an ALJ who has heard claimant's testimony and considered claimant's demeanor."). Evaluation of a claimant's subjective complaints requires a two-step process. See Cabral v. Colvin, No. 12-11757-FDS, 2013 WL 4046721, at *7 (D. Mass. Aug. 6, 2013) (citing Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 21 (1st Cir. 1986)); see also SSR 96-7p.[3]

"The ALJ first decides whether there is an underlying impairment that is shown by medically acceptable diagnostic techniques and could be expected to cause the claimant's symptoms." Hunt v. Colvin, No. 13-cv-074-JD, 2013 WL 5273807, at *8 (D.N.H. Sept. 17, 2013). "Second, if such an impairment is found, the ALJ evaluates the intensity, persistence, and limiting effects of the impairment or impairments." Id. At the second step, the claimant's credibility is assessed based on consideration of several factors: the claimant's daily

---

[3] When the ALJ made his decision on Natsis's claim, credibility assessments by SSA decisionmakers were governed by SSR 96-7p. Since then, SSR 96-7p has been superseded by SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). "Because the ALJ issued his decision while SSR 96-7p was in effect, the court evaluates the ALJ's credibility assessment under that regulation." Regalado v. Colvin, No. 15-CV-299-PB, 2016 WL 4775525, at *8 (D.N.H. Sept. 14, 2016).

activities, functional restrictions, non-medical treatment,
medications and side-effects, precipitating and aggravating
factors, and the nature, location, onset, duration, frequency,
radiation, and intensity of the pain.  See 20 C.F.R. §
404.1529(c)(3); Avery, 797 F.2d at 29.

The ALJ noted that Natsis "testified as to an extremely
limited range of functional abilities."  Admin. R. at 35.  The
ALJ found, however, that Natsis's testimony about the severity
of his symptoms was not credible in light of Natsis's statements
in his Function Report, which were inconsistent with his
testimony at the hearing.  For example, the ALJ noted that
Natsis wrote in his Function Report that he could walk one or
two miles before requiring a break, which conflicted with his
testimony at the hearing that he could walk only a "couple of
blocks."  The ALJ also referenced Natsis's testimony at the
hearing that he could not sit for long periods of time and had
trouble climbing stairs, noting that such limitations were
contradicted by Natsis's representations in his Function Report.

In addition, the ALJ also noted that Natsis received only
conservative treatment for his spinal condition, such as
physical therapy and a home exercise program, and that his
medical providers stated that he had improved with such
treatment.  The ALJ further noted that Natsis had not required

11

surgery on his spine, and that a medical provider indicated that Natsis had been "overall doing fairly well" with medication, such as oxycodone.

Finally, the ALJ cited several of Natsis's medical records which indicated that Natsis's testimony concerning his own limited functionality was not credible.  The ALJ noted medical records from June 2014, in which Natsis's medical provider reported normal strength, sensation, gait, and heel and toe walking, as well as an "unremarkable neurological examination." Admin. R. at 35.  The ALJ also cited a pain clinic note from Kathleen White, APRN in November 2013, in which White noted that she told Natsis that he should participate in "employment, volunteerism, [and] social interaction" as a "distraction" from his pain.  Id.

The ALJ properly assessed Natsis' credibility and made specific findings to support his evaluation.  Therefore, the ALJ's evaluation is entitled to deference.

III. Residual Functional Capacity

At the fourth step of the sequential analysis, the ALJ assesses the claimant's residual functional capacity, which is a determination of the most a person can do in a work setting despite her limitations caused by impairments, see 20 C.F.R. § 404.1545(a)(1), and his past relevant work, see id. at

§ 404.1520(a)(4)(iv)).  If the claimant can perform his past relevant work, the ALJ will find that the claimant is not disabled.  See id. at § 404.1520(a)(4)(iv)).  The ALJ's residual functional capacity assessment is reviewed to determine whether it is supported by substantial evidence.  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); Pacensa v. Astrue, 848 F. Supp. 2d 80, 87 (D. Mass. 2012).

Natsis asserts that the ALJ's residual functional capacity "is not supported by medical documentation.  The ALJ did not give appropriate weight to the medical opinion of the Plaintiff's treating physicians."  Doc. no. 11-1 at 4.  Natsis, however, does not identify any medical opinion that the ALJ failed to properly assess.  As mentioned above, the medical records which Natsis cites are not opinions.  Rather, they are treatment notes without opinions.  The ALJ properly relied on the opinion provided by Dr. Fairley, who reviewed the medical record.

In formulating the residual functional capacity, the ALJ gave Dr. Fairley's opinion great weight because Dr. Fairley is familiar with the Social Security structure, he supported his opinion with citations to specific evidence in the record, and the opinion was consistent with Natsis's limited treatment for back pain and his daily activities.  Although Natsis contends

13

that the residual functional capacity assessment is inconsistent
with other medical opinion evidence in the record, that argument
is without merit for the reasons discussed above.

Natsis also briefly raises an additional challenge to the
ALJ's determination that Natsis could perform his past work as a
restaurant owner and credit analyst.  Natsis asserts that the
ALJ improperly relied on the vocational expert's response to a
hypothetical question to support his finding that Natsis had the
residual functional capacity to return to his previous work.
Natsis notes that in response to a hypothetical question that
included further limitations on Natsis's functional abilities,
the vocational expert opined that he could not return to his
past work.

For the reasons discussed above, the ALJ's residual
functional capacity assessment is supported by substantial
evidence.  As a result, the hypothetical question that
incorporated the residual functional capacity assessment was
correct and the vocational expert's opinion based on the
hypothetical question provides substantial evidence in support
of the ALJ's Step Four finding.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse (document no. 11) is denied.  The Acting Commissioner's motion to affirm (document no. 15) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 16, 2017

cc:  Michael T. McCormack, Esq.
     T. David Plourde, Esq.
     John A. Wolkowski, Esq.

15